EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN LIFE
INSURANCE COMPANY,
    PLAINTIFF,

vs.

SHERRON MOORE, KATRINA CLARK,
as GUARDIAN AD LITEM for
KAVOTTIS MOORE and KYLA MOORE, Minors;
KEVIN MOORE II, and
LAWRENCE E. MOON FUNERAL HOME INC.,
DEFENDANTS.

CASE NO.: 03-CV-72791-DT

DISTRICT JUDGE JOHN CORBETT O'MEARA
MAGISTRATE STEVEN D. PEPE

## REPORT AND RECOMMENDATION

This action results from a Complaint for Interpleader brought by Plaintiff, Metropolitan Life Insurance Company ("MetLife"), for adjudication of Kevin L. Moore's ("Decedent") life insurance policy issued by MetLife to Decedent's employer Delphi Automotive Systems (Dkt. # 1). The policy issued by MetLife funds The Delphi Life and Disability Program, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The basis of the dispute centers around who is to receive Kevin Moore's life insurance proceeds: (1) Sheila Moore (Kevin's wife at the time of his death) or (2) Katrina Clark (his first wife) and Kevin Moore's two children, Kyla and Kavottis, from Mr. Moore's marriage to Ms. Clark.

On May 7, 2004, Sherron Moore filed a motion for summary judgment (Dkt. # 29) which Magistrate Judge Wallace Capel granted on October 29, 2004 (Dkt. # 40). District Judge O'Meara adopted Judge Capel's Report and Recommendation on December 1, 2004 (Dkt. # 43).

The Sixth Circuit remanded this case for further proceedings consistent with its ruling. *Metropolitan Life Ins. Co. v. Clark*, 159 Fed. Appx. 662, 664, 2005 WL 3419998 (6th

Cir. 2005). Plaintiff Katrina Clark filed a motion for action on summary judgment, demand for judgment/distribution of MetLife proceeds, and to dismiss conference (Dkt. #63), and a motion to disqualify Magistrate Judge Wallace Capel, Jr. and United States District Court Judge John Corbett O'Meara (Dkt. #64). The undersigned issued a Report and Recommendation denying Ms. Clark's motions (Dkt. # 73). This Report and Recommendation was adopted by Judge O'Meara on March 14, 2007 (Dkt. # 74).

Following Judge O'Meara's adoption of the undersigned's Report and Recommendation, this suit has languished for over a year because both parties are *pro se.* An April 1, 2008, status conference was held, and at the conference it was determined that in light of the Sixth Circuit's remand and the status of the parties, that Katrina Clark would provide the Court with an itemization of the Social Security benefits she received on behalf of Kyla and Kavottis including: (1.) children's benefits based on Kevin Moore's disability prior to his death and (2.) Child's benefits under 42 U.S.C.A. § 402 (d) after Kevin Moore's death on April 26, 2006. The Sixth Circuit noted the possibility of Child's Benefits being available and its possible impact on what the Genesee County Circuit Court's modification in March of 2001 meant with respect to the MetLife insurance policy.

The remand from the Sixth Circuit describes the facts of this case in the appellate opinion, which are not in dispute:

> Kevin Moore and Katrina Clark were divorced in Michigan on December 15, 1995. Moore was ordered to pay child support in the amount of $151 per week for his then-five and three-year-old children, Kyla and Kavottis, until they reached the age of majority. The state court also held that Moore "shall forthwith make all three [FN 1.] of his children irrevocable beneficiaries pro rata to the proceeds of any insurance policy presently in force upon his life, and said minor children shall remain the irrevocable beneficiaries to such payment for so long as they are eligible to receive support from Plaintiff [Moore.]" At the time, Moore

2

had a life insurance policy with MetLife in the amount of $50,000 through his
employment at General Motors.

> FN 1. Moore only had two children with Clark; the "three" appears
> to be a clerical mistake. Kevin Moore's son by another marriage,
> Kevin Moore II, also submitted a claim to MetLife upon his
> father's death. His claim was without merit, however, and properly
> dismissed.

Moore remarried in 1999. On December 2, 1999, he designated his wife – Sherron
Moore – as the sole beneficiary of his General Motors policy. Kevin Moore died
on April 26, 2003. Moore's widow and his ex-wife, on behalf of minors Kyla and
Kavottis Moore, filed claims with MetLife under the policy. Metlife filed an
interpleader in district court and requested that Clark be appointed Guardian Ad
Litem for her two minor children. The district court accepted the interpleader and
released MetLife; the court appointed Clark as requested.

Clark and Sherron Moore each filed for summary judgment. A magistrate judge
prepared a report and recommendation wherein he concluded that Sherron Moore
was entitled to the proceeds of Kevin Moore's insurance policy as a matter of
law.
The district court adopted the report and recommendation, thereby granting
summary judgment in favor of the appellee. Clark filed a motion to set aside or
amend the judgment, which the district court denied.[1] Clark filed this appeal pro
se, having dismissed her attorney.

This case arises under 29 U.S.C. §§ 1001-1461 (collectively "the Employee
Retirement Income Security Act of 1974" or "ERISA"). Therefore, the district
court had jurisdiction pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1291 grants us
jurisdiction to hear this timely appeal from a final judgment of district court.

*Id.* at *1.

It is clear that in December 15, 1995, when the judgment of divorce was entered, Kevin Moore was working, and the $151 per week child support for two children was adopted by the Family Division of the Genesee County Circuit Court using Mr. Moore's earning capacity and the Michigan Child Support Guidelines. *See 2004 Michigan Child Support Formula Manual,*

---

[1] The district court then Ordered distribution of the insurance proceeds to Sherron Moore and her attorney on December 17, 2004 (Dkt. #53).

Friend of Court Bureau, State Court Administrative Office, Effective October 1, 2004. At that time, Kavottis (born November 2, 1992) was age 3 and Kyla (born April 22, 1990) was 5. The judgment of divorce stated that the support obligation reduced to $115 per week when only one child was eligible, and reduced to $98 if Mr. Moore became disabled and unable to work. With this background, the court imposed the $50,000 life insurance requirement to protect the continued support "so long as [the two children] are eligible to receive support from Plaintiff [Moore.]." Mr. Moore became disabled sometime in 2000 and eligible for Social Security Disability.

Under the Michigan Child Support Formula the amount of the social security disability benefits available for the children is deducted from the amount of support the child or children are due. The Genesee County Referee noted that Mr. Moore received $1,200/month social security disability plus a $600 pension. At that time, the two children became eligible for Social Security benefits payable to their representative payee, Ms. Clark. After Mr. Moore became disabled the Circuit Court modified the judgment of divorce stating that Mr. Moore's "support obligation shall be terminated so long as the Defendant/Mother continues to receive the monthly payments from [Social Security]" on behalf of Kyla and Kavottis.[2] The Circuit Court added that Moore's "health insurance obligations shall continue," but did not specifically mention the life insurance policy. Yet, even without this modification, upon disability Kevin Moore's support obligations under the 1999 divorce decree changed to $98/week for both children or $5,096/year.

---

[2] The Referee had recommended the support termination be retroactive to November 6, 2000.

After Mr. Moore death on April 26, 2003, Kyla and Kavottis became eligible for Child's Benefits under 42 U.S.C.A. § 402 (d).[3] Records from the Social Security Administration indicate that Ms. Clark received on behalf of Kyla and Kavottis the following amounts for each child:

| | |
|---|---|
| 2001: $3,048 ($254/mo)[4] | 2005: $7,356 ($613/mo) |
| 2002: $2,535 ($211/mo) | 2006: $7,656 ($638/mo) |
| 2003: $5,232 ($436/mo)[5] | 2007: $7,920 ($660/mo) |
| 2004: $7,404 ($617/mo) | 2008: $675/month (through 4/3/08) |

It is estimated that the monthly payments in 2001 were approximately 206.66/child per month (see footnote 4). $206.66 x two children x 12 months = $4,959.84 in 2001. This approaches the $98/week for both children or $5,096/year under the divorce decree for periods after Mr. Moore became disabled. In 2002, the $2,535 per child received was $5,070. Thus the monthly Social Security benefits for Kavottis and Kyla in 2001 and 2002 were nearly the same

---

[3] 42 U.S.C.A. § 402 (d) Child's insurance benefits states that "[e]very child . . . of an individual entitled to . . . disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child – . . . at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19 . . . .

[4] It is likely that because the $3,048 per child Ms. Clark received in 2003 exceeds the $2,535 per child ($211/mo.) that she received in the following year (2004) this difference was because the 2003 benefits included some lump sum retroactive benefits paid in 2003 from Mr. Moore's 2002 disability onset date. If each child received $211 per month in 2003, and on January 1, 2003, there was a 2.1% COLA, then each child would have received about $206.66/month in 2002.

| Year COLA | Year COLA | Year COLA |
|---|---|---|
| 2001 2.6% | 2004 2.7% | 2007 2.3% |
| 2002 1.4% | 2005 4.1% | source: |
| 2003 2.1% | 2006 3.3% | http://www.ssa.gov/OACT/COLA/colaseries.html |

[5] Mr. Moore died April 26, 2003, thus it is likely the Child's benefits began in May substantially increasing the monthly benefits to over $600/child/month,

5

as the $5,096/year support obligation under the original divorce decree. With Mr. Moore's death in April 2003, the monthly and annual amounts for Kyla and Kavottis exceed the $5,096/year that would have been due under the divorce decree for periods after Mr. Moore became disabled.

With Kyla turning 18 on April 22, 2008, unless still a full-time student in high school, the benefits will be reduced to a single child's survivor's benefits, though all support obligations would also have ended under the divorce judgment for Kyla on the same circumstance of attaining 18 years or no longer remaining in high school up to age 19 ½.

Had the divorce judgment not been amended in March 2001 terminating support obligations upon continued social security payments for the two children, the 1999 divorce order would have reduced to $98/week for both children or $5,096/year.[6] As noted above, the Social Security benefit amounts that Ms. Clark received in 2001 and 2002 on behalf of Kyla and Kavottis was nearly the same as $5,096/year support amount. With the Social Security cost of living increase it would have exceeded that amount in 2003 and following even if Mr. Moore had not died. With his death in April 2003, it appears that the amount Ms. Clark received in 2003 to date substantially exceeds the $5,096/year disability support amount.

From these financial data, the initial amounts of which would have been available to the Genesee County Referee in making the March 2001 recommendation to the Genesee County Circuit Court, it is clear that payment of the children's share of the Social Security disability payment for Kyla and Kavottis would have been seen as an adequate substitute for the child support when the Court eliminated Mr. Moore's support obligation contingent upon those Social

---

[6] Had Mr. Moore not become disabled the full child support amount of $151/week would have been $7,852/year.

Security benefits being made to Ms. Clark for Kyla and Kavottis. It would also be consistent with why the Circuit Court continued the health insurance obligation, but did not continue the life insurance obligation because the Social Security survivor's benefits were larger than the children's benefits based on Mr. Moore's disability.

The question the Court of Appeals noted on the remand is whether the Michigan Circuit Court, in modifying the support obligation in 2001 due to Mr. Moore's November 2000 disability, intended that the life insurance proceeds supplement any disability insurance or surviving Child's benefits upon Mr. Moore's death. The Court of Appeals did not have available to it the Social Security payment amounts now provided to this Court. The unresolved question was whether the life insurance would have been needed as a substitute for any support payments upon Mr. Moore's death or as security to make sure the support (or some surrogate payments) was made on behalf of Kyla and Kavottis if Mr. Moore died.

Michigan courts have, at times, treated life insurance proceeds as security for support obligations. *See Monreal v. Monreal*, 126 Mich. App. 60 (Mich. App. 1983); *Gray v. Independent Liberty Life Ins. Co.,* 57 Mich. App. 590 (Mich. App. 1975); *Merchant v. Merchant*, 130 Mich. App. 566 (Mich. App. 1983). *Monreal* involved a dispute over the distribution of life insurance proceeds owed to decedent's children from a prior marriage. The court, citing the agreement of the parties, held that life insurance proceeds were security against non-payment of support and not a supplement to the balance which was due to the decedent's children. In *Monreal*, the court noted that the property settlement agreement provided that:

> 6. Each party shall have the insurance contract on his or her own life, free from the claim of the other party, but the plaintiff shall designate the minor children of the parties as irrevocable beneficiaries on his life insurance policy or policies until his

7

> obligation to pay support for said minor children has been fully
> completed.

*Monreal*, 57 Mich. App. at 62.

Likewise, in *Merchant*, the court held that life insurance was intended as security that would provide child support payment if for some reason support payments ceased. *Merchant v. Merchant*, 130 Mich. App. 566, 574. *Merchant* distinguished language requiring insurance coverage for children until support obligations concluded from language in other cases retaining children as beneficiaries for a more open ended duration. *See Smith v. John Hancock Mutual Life Ins. Co.*, 65 Mich. App. 193, 194 (Mich. App. 1975) (noting that divorce agreement stated that the father would "keep and maintain as beneficiary" his children).

The divorce agreement between Mr. Moore and Ms. Clark provided that Mr. Moore:

> shall forthwith make all three of his children irrevocable
> beneficiaries pro rata to the proceeds of any insurance policy
> presently in force upon his life, and said minor children shall
> remain the irrevocable beneficiaries to such payment for so long as
> they are eligible to receive support from Plaintiff [Moore.]

The language in the agreement between Ms. Clark and Mr. Moore follows the pattern of the agreements in *Monreal* and *Merchant* which provided that children were to be beneficiaries for the duration of time that they were eligible for support payments. Given this language, it is reasonable to conclude that Mr. Moore's life insurance was intended as security should support payments to his children cease.

As noted in the payment history, the social security benefits received each year on behalf of Kyla and Kavottis were nearly the same as or exceeded the support obligations under the original 1999 divorce decree once Mr. Moore became disabled. The Social Security benefits

received as surviving Child benefits for Kyla and Kavottis after Mr. Moore died were substantially more generous than the prior social security disability benefits or the original $5,096/year child support payments. Thus, the amount of the $5,096/year child support under the 1999 divorce judgment for periods after Mr. Moore became disabled was sufficiently secured in 2001 and thereafter by the Social Security benefits Ms. Clark would receive for Kyla and Kavottis that there would have been no need to require continued life insurance proceeds to act as security. This would explain why only the health insurance and not the life insurance was required to be continued in the March 2001 modification of Mr. Moore's obligations.[7]

At the time of his death, Mr. Moore had a child support arrearage of $2,230.68 due his children which must have accrued for periods prior to March 2001 when the child support obligation was ended so long as the children received Social Security benefits. *Merchant* noted that child arrearages can be covered and secured by a decedent's life insurance policy. *Merchant*, 130 Mich. App. at 575. Yet, an arrearage payment from Mr. Moore's life insurance proceeds is not necessary in the present case as the increased surviving Child benefits payments over the years more than make up for any arrearage. There is no mention or indication in 2001 that the Referee or the Genesee County Circuit Court had any concern or awareness of the

---

[7] One might argue that the surviving Child's Social Security benefits were available in 1999 when the original divorce decree required the life insurance. Yet, in 1999, Mr. Moore was employed. The 1999 decree clearly noted his likely reduced income for his own care if he were to become disabled, because it reduced the support obligation by approximately one third. When certain individuals become disabled they often lose employment benefits that may include subsidized life insurance. Others facing the loss of income due to disability need to reduce their expenses by ending life insurance payments. Some with whole life policies need to obtain their cash value for their living expenses. Thus, with Mr. Moore's loss of employment income with his disability and his living on $1,800/month in 2001, there are reasons why the Genesee County Circuit Court would no longer have required the life insurance policy as a security when Mr. Moore was no longer an able body worker and suffered a significant reduction in income.

9

$2,230.68 arrearage. Whether any equitable considerations should tilt the matter in Ms. Clark's direction because of this $2,230.68 arrearage should take into consideration the payment history to date. As noted above the divorce decree set the support upon Mr. Moore's disability at $98/week for both children or $5,096/year. Below are the amounts Ms. Clark received on behalf of Kyla and Kavottis compared to this $5,096 amount.

```
2001: $3,048 x 2 = $ 6,096  - $5,096 = + $1,000
2002: $2,535 x 2 = $ 5,070  - $5,096 = - ( $   26)
2003: $5,232 x 2 = $10,464 - $5,096 = + $ 5,368
2004: $7,404 x 2 = $14,808 - $5,096 = + $9,712
2005: $7,356 x 2 = $14,712 - $5,096 = + $9,616
2006: $7,656 x 2 = $15,312 - $5,096 = + $10,216
2007: $7,920 x 2 = $15,840 - $5,096 = + $10,744
2007: $675/month x 6 months x 2 = $8,100 - $2,548 (6 mos.) = $5,552
```

It is clear that additional amounts received on behalf of Mr. Moore's Social Security disability and survivors benefits for his two children exceeded this $2,230.68 arrearage in the third quarter of 2003.

Mr. Moore erred in making his wife, Sherron Moore, the sole, unconditional beneficiary of his life insurance policy. Yet, based on the Social Security benefits that Ms. Clark received on behalf of Kyla and Kavottis because of Mr. Moore's disability in 2001, it is found that the Genesee County's continuation of the health insurance in its 2001 modifications without also continuing the life insurance obligation was not an oversight. The Genesee County Circuit Court intended to end Mr. Moore support obligation and end the earlier need for the life insurance policy as security for those payments so long as Kyla and Kavottis received Social Security benefits approaching or exceeding Mr. Moore's support obligations. In light of the Social Security benefits available from and after Mr. Moore's disability, and those that would have

become available for the benefit of Kyla and Kavottis on his death, the payment of Mr. Moore's Social Security benefits on behalf of his children, Kyla and Kavottis, was an adequate substitute and adequate security to fulfill his support obligation.

After the earlier judgment in this case, the MetLife insurance proceeds were paid to Sherron Moore. In light of the above analysis, it appears that she was entitled to those life insurance benefits.

Accordingly, for the reasons stated above, **IT IS RECOMMENDED** that a judgment be entered noting that Sherron Moore was entitled to Kevin Moore's life insurance proceeds from the Metropolitan Life Insurance Company and that Katrina Clark, As Guardian Ad Litem for Kavottis Moore and Kyla Moore, and Kavottis Moore and Kyla Moore as individuals have no entitlement to those proceeds.

The parties may object to and seek review of this Report and Recommendation, but they are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).

Dated: July 8, 2008  s/Steven D. Pepe
Ann Arbor, Michigan  United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 8, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298
